IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DAVID OTHELLO PARKER JR.,                          No. 3:20-cv-01325-HZ
through DAVINA MARIE PARKER
as personal representative of                           OPINION & ORDER
the estate of DAVID PARKER, JR.,


                    Plaintiff,

        v.

ST. JUDE OPERATING COMPANY, LLC
dba HEALTHCARE AT FOSTER CREEK,
and BENICIA SENIOR LIVING, LLC

                    Defendants.


Caroline Janzen
Paul Robert Armstrong Janzen
Janzen Legal Services, LLC
15875 Boone's Ferry Rd
Ste Unit 2409
Lake Oswego, OR 97035

        Attorneys for Plaintiff

Jay W. Beattie
Kelly A. Giampa
Melissa J. Bushnick
Michael J. Estok
Lindsay Hart LLP
1300 SW Fifth Avenue
Suite 3400
Portland, OR 97201

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff, Davina Marie Parker, personal representative of the estate of David Parker, Jr., has moved to remand her state law claims for wrongful death sounding in negligence and elder abuse to state court. Defendants, St. Jude operating company, LLC dba Healthcare at Foster Creek and Benicia Senior Living, LLC have moved to dismiss Plaintiff's complaint for failure to state a claim. Based on the following, the Court grants Plaintiff's Motion to Remand and denies Defendants' Motion to Dismiss as moot.

## BACKGROUND

     While a resident at Foster Creek nursing home, David Othello Parker, Jr. contracted COVID-19 and died. Notice of Removal Ex. A (Compl.) at 17, ECF 1.[1] After Mr. Parker's death, Davina Marie Parker, his surviving daughter, filed this action for negligence, negligence per se, and elder abuse on his behalf against Defendants. Compl. at 1. Plaintiff alleges Defendants' negligent failure to protect against the transmission of COVID-19 caused Mr. Parker's suffering and death. *Id.* at 5. Specifically, Plaintiff alleges:

> Defendants failed to adopt or follow specific infection control guidelines, proper isolation and safety protocols, and failed to provide sufficient personal protective equipment ("PPE"). In addition, Defendants failed to maintain adequate staffing levels and failed to train staff appropriately per recommended guidelines. These

---

[1] The Complaint can be found at Exhibit A to the Notice of Removal pages 16–29.

and other failures by Defendants caused physical and mental injury and death to
Mr. Parker and others.

*Id.* The Complaint also incorporates by reference the findings of an Oregon Department of
Human Services investigation into Foster Creek nursing home's practices related to the spread of
COVID-19 in its facility. *Id.* at 6–8.

Plaintiff originally filed this action in Oregon state court. *Id.* Defendants timely removed
this suit to federal court, asserting federal question jurisdiction under 28 U.S.C. § 1331. Notice of
Removal 1. After removal, Defendants filed a Motion to Dismiss for Failure to State a Claim,
and Plaintiff filed a Motion to Remand the action to state court.

## STANDARDS

Generally, "any civil action brought in a State court of which the district courts of the
United States have original jurisdiction, may be removed by the defendant or the defendants, to
the district court of the United States for the district and division embracing the place where such
action is pending." 28 U.S.C. § 1441(a); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d
1089, 1090 (9th Cir. 2003) ("Any civil action may be removed to federal district court so long as
original jurisdiction would lie in the court to which the case is removed."). "The removal statute
is strictly construed, and any doubt about the right of removal requires resolution in favor of
remand." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). "The presumption against
removal means that 'the defendant always has the burden of establishing that removal is
proper.'" *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (quoting
*Gaus*, 980 F.2d at 566).

A notice of removal must be filed within thirty days after the defendant receives, through
service or otherwise, a copy of the initial pleading setting forth the claim for relief upon which
such action or proceeding is based. 28 U.S.C. § 1446(b)(1). When removal is under § 1441(a), all

defendants who have been properly joined and served must join in or consent to the removal. 28 U.S.C. § 1446(b)(2)(A).

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas*, 553 F.3d at 1244. Remand is governed by 28 U.S.C. § 1447(c) which provides, in pertinent part, that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."

## DISCUSSION

Plaintiff argues the Court should grant her motion to remand because there is no federal question on the face of the complaint. Defendants argue removal is proper because Plaintiff's state law claims "are completely preempted by the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e, and thus arise under federal law." Notice of Removal at 3. They argue complete preemption applies because the Public Readiness and Emergency Preparedness Act (the PREP) provides the exclusive remedy for claims arising out of "the administration or use of covered countermeasures" during a pandemic.  Notice of Removal at 4, 12.

Plaintiff contends that the PREP Act does not apply to her claims because she does not affirmatively allege misuse of covered countermeasures, but rather a failure to act and failure to use personal protective equipment (PPE). She also argues that the complete preemption exception to the well-pleaded complaint rule does not apply to the PREP Act.

Because Plaintiff's claims are not completely preempted and it is unclear from the face of the complaint whether Plaintiff alleges misuse of covered countermeasures, the Court remands this case to state court.

"Removal based on federal-question jurisdiction is reviewed under the longstanding well-pleaded complaint rule." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018). The "well-pleaded complaint rule,' provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2003) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). The federal issue "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Id.* (quoting *Gully v. First Nat. Bank*, 299 U.S. 109, 113 (1936) (noting that the federal controversy cannot be "merely a possible or conjectural one")). "Thus the rule enables the plaintiff, as 'master of the complaint,' to 'choose to have the cause heard in state court' 'by eschewing claims based on federal law.'" *Id.* (quoting *Caterpillar*, 482 U.S. at 399).

Complete preemption is an exception to the well-pleaded complaint rule. "[T]he complete preemption doctrine, provides that 'Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Moore-Thomas*, 553 F.3d at 1243–44 (citing *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). Once completely preempted, "the state-law claim is simply 'recharacterized' as the federal claim that Congress made exclusive." *Hansen*, 902 F.3d at 1058 (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009)). "[W]hen a federal statute wholly displaces the state-law cause of action through complete preemption," the state claim can be removed. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Complete preemption is "rare." *Hansen*, 902 F.3d at 1057. The Supreme Court has found complete preemption applicable to only three federal statutes. *See City of Oakland v. BP PLC*,

969 F.3d 895, 905 (9th Cir. 2020) (noting that complete preemption applies only to § 301 of the

Labor Management Relations Act, 29 U.S.C. § 185, § 502(a) of the Employee Retirement

Income Security Act of 1974, and §§ 85 and 86 of the National Bank Act). Noting the limited

nature of the doctrine, the Ninth Circuit has held that "complete preemption for purposes of

federal jurisdiction under § 1331 exists when Congress: (1) intended to displace a state-law cause

of action, and (2) provided a substitute cause of action." *City of Oakland*, 969 F.3d at 906  (citing

*Hansen*, 902 F.3d at 1057).

Before complete preemption can apply to a plaintiff's state law claims, the "the claims at

issue must fall within the scope of the relevant federal statute." *Jackson v. Big Blue Healthcare,*

*Inc.*, No. 2:20-CV-2259-HLT-JPO, 2020 WL 4815099, at *3–4 (D. Kan. Aug. 19, 2020) (citing

*Beneficial Nat. Bank*, 539 U.S. at 9 n.5). As the removing party in this case, it is Defendants'

burden to establish federal jurisdiction. Thus, for Defendants to prevail on their complete

preemption argument and establish federal question jurisdiction, they must first show that the

PREP Act applies to Plaintiff's claims.

## I.    Application of the PREP Act

The Parties disagree on whether Plaintiff's claims fall within the scope of the PREP Act.

To determine whether a statute applies, the court looks to its "plain and unambiguous meaning."

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "If the statutory language is unambiguous

and the statutory scheme is coherent and consistent," judicial inquiry must cease. *In re Ferrell,*

539 F.3d 1186, 1190 n.10 (9th Cir.2008) (quoting *Robinson*, 519 U.S. at 340). "The plainness or

ambiguity of statutory language is determined by reference to the language itself, the specific

context in which that language is used, and the broader context of the statute as a whole."

*Robinson*, 519 U.S. at 341.

Passed in 2005, the PREP Act authorizes the Secretary of the Department of Health and Human Services to issue a declaration determining that "a disease or other health condition or other threat to health constitutes a public health emergency." 42 U.S.C. § 247d-6d(b). Once in effect, the PREP Act provides immunity from liability for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). If immunity applies, the injured person or their survivors may seek compensation from the Countermeasures Injury Compensation Program—a regulatory program that provides reimbursement for some losses associated with the use of covered countermeasures. 42 U.S.C. § 247d-6e.

The only exception to the Act's immunity is when the injury occurs through willful misconduct. In these instances, the PREP Act provides procedural rules that constrain the injured person's claim. 42 U.S.C. § 247d-6d(d). For example, they must file in the U.S. District Court for the District of Columbia and the burden of proof is clear and convincing evidence. *Id.*; 42 U.S.C. § 247d-6d(c).

On March 10, 2020, the Secretary declared the COVID-19 pandemic a public health emergency under the PREP Act. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198-01 (Mar. 10, 2020).

Plaintiff argues the PREP Act does not apply to her claims because she alleges a failure to use PPE rather than a causal connection between the use of PPE and Mr. Parker's death. Mot. to Remand 9. She also argues that Defendants cannot meet their burden to show that the PPE in use at the relevant time qualified as covered countermeasures under the Act. Defendants argue that a causal relationship exists because the "key allegation underlying each of these claims is

that Defendants misused personal protective equipment ("PPE")" that qualified as covered countermeasures." Notice of Removal at 4; Defs' Resp. 7–8.[2]

### A.    Covered Countermeasures

Under the PREP Act and relevant COVID-19 declarations there are four categories of covered countermeasures: (1) a qualified "pandemic or epidemic product," (2) a "security countermeasure," (3) a drug, biological product, or device that the U.S. Food and Drug Administration (FDA) has authorized for emergency use, and (4) a "respiratory protective device" that is approved by the National Institute for Occupational Safety and Health (NIOSH). 42 U.S.C. § 247d-6d(i)(1).

The first category of covered countermeasures includes any drug, biological product, or device approved by the FDA and developed "to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic" or used "to limit the harm such pandemic or epidemic might otherwise cause." 42 U.S.C. § 247d-6d(i)(7). The second category of covered countermeasures refers to any drug, biological product, or device used "to diagnose, mitigate, prevent, or treat harm from any biological, chemical, radiological, or nuclear agent" identified by the Secretary of Homeland Security as a material threat to national security. 42 U.S.C. § 247d-6d(i)(9). The third category of covered countermeasures includes drugs, biological products, and devices that the FDA has authorized for use outside its ordinary regulatory processes via an Emergency Use Authorization. 42 U.S.C. § 247d-6d(i)(1). The fourth category of covered countermeasures was added when Congress amended the PREP Act via Section 6005 of the Families First Coronavirus Response

---

[2] The parties also argue over whether Defendants are "Covered Persons" under the Act. Pl.'s Mot. to Remand at 10; Defs' Opposition to Pl.'s Mot. to Remand at 15. Because the Court assumes the PREP Act applies to some of Plaintiff's claims for the purposes of the complete preemption analysis, the Court declines to reach these arguments.

Act (FFCRA) and Section 3103 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). FFCRA, PL 116-127, 134 Stat 178 (Mar. 18, 2020); CARES Act, PL 116-136, 134 Stat 281 (Mar. 27, 2020). This category applies to respiratory protective devices, including N95 respirators. To be covered by the PREP Act, the respiratory protective device must be: (1) approved by NIOSH under 42 C.F.R. Part 84; and (2) determined by the Secretary to be a priority for use during a public health emergency. 42 U.S.C. § 247d-6d(i)(1)(D).

### B.    Causal Relationship

The PREP Act does not define "administration" and "use" of covered countermeasures. However, the initial COVID-19 Declaration clarified that the Act applies to claims that have a causal relationship to the administration and use of a covered countermeasure. The Declaration states:

> Administration of a Covered Countermeasure means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures.

> The definition of "administration" extends only to physical provision of a countermeasure to a recipient, such as vaccination or handing drugs to patients, and to activities related to management and operation of programs and locations for providing countermeasures to recipients, such as decisions and actions involving security and queuing, but only insofar as those activities directly relate to the countermeasure activities.

Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198-01, *Section IX.*

Under these definitions, if the plaintiff's harm has a causal relationship to the administration or use of a covered countermeasure the PREP Act provides immunity to all covered persons.

For the purposes of the complete preemption analysis, it appears Plaintiff alleges a causal connection between the harm suffered and what could qualify as covered countermeasures. While most of her allegations relate to the failure to act and/or failure to use PPE, Plaintiff incorporates by reference a state report that includes findings that staff at Foster Creek may have misused PPE. Compl. ¶ 19–20. This is enough to suggest that Plaintiff's claims were meant to be based at least in part on allegations related to the misuse of PPE.

There is some debate between the parties concerning what types of PPE were in use at the time of Mr. Parker's infection and death, and whether the specific protective equipment can be classified as a covered countermeasure under the Act. The Court is unable to make this determination based on the briefing before it. Whether the PPE in use qualified as covered countermeasures would require a list of the specific equipment used during the relevant period. For example, whether the facemasks used by Foster Creek employees qualify as covered countermeasures likely depends on if staff were using N95 masks or other types of masks, such as surgical masks. This is because even though the CARES Act amended the PREP Act to include N95 masks as covered countermeasures, it appears surgical masks, for example, may not have been covered at the time of Mr. Parker's COVID-19 infection.[3]

What PPE was in use at Foster Creek and the extent of the allegations related to misuse will be determined during discovery and at trial. For the purposes of the complete preemption analysis, the Court assumes that any PPE used or misused by Foster Creek staff would qualify as

---

[3] U.S. Food and Drug Administration, *Surgical Masks Emergency Use Authorization Letter of Approval* (Aug. 5, 2020) (issuing an emergency use authorization as to surgical masks and therefore likely qualifying surgical masks as covered countermeasures).

a covered countermeasure and that the PREP Act therefore may provide Defendants immunity on some of Plaintiff's claims.[4]

## II.    Complete Preemption Analysis

Assuming the relevance of the PREP Act to this case, the next question the Court must address is whether complete preemption applies to the PREP Act and justifies removal. Notably, this is not one of the three statutes that the Supreme Court has identified as meeting the necessary criteria for complete preemption. *City of Oakland*, 969 F.3d at 905. The PREP Act also does not meet the Ninth Circuit's two-pronged complete preemption test. *Id.*

The doctrine of complete preemption is meant to be very limited: this is not the "rare" statute where complete preemption applies. *Hansen*, 902 F.3d at 1057. First, the PREP Act does not fully supplant state law negligence claims related to COVID-19. As courts around the country continue to find, the PREP Act does not prevent plaintiffs from bringing state law negligence claims based on an alleged failure to use covered countermeasures.[5] A court has also

---

[4] The Court does not hold that Defendants are entitled to PREP Act immunity on any of Plaintiff's claims. The state court will make that determination on remand.

[5] *See Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, No. CV 20-6605 (KM)(ESK), 2020 WL 4671091, at *1, *9 (D.N.J. Aug. 12, 2020) (finding the failure to "observe a wide range of appropriate safety precautions" "would not be preempted by the PREP Act, which is designed to protect those who employ countermeasures, not those who decline to employ them."); *Jackson v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2259-HLT-JPO, 2020 WL 4815099, at *1, *8 (D. Kan. Aug. 19, 2020) (holding the PREP Act does not apply to "the non-administration or non-use of covered countermeasures" and concluding that the PREP Act did not apply to plaintiff's claims because "[d]efendants fail[ed] to point to any claim in the complaint where Plaintiff alleges that the administration or use of any of these things [covered countermeasures] caused the decedent's death."); *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20CV1198, 2020 WL 6140474, at *7 (W.D. Pa. Oct. 16, 2020) (same); *Martin v. Serrano Post Acute LLC*, No. CV 20-5937 DSF (SKX), 2020 WL 5422949, at *2 (C.D. Cal. Sept. 10, 2020) (finding the question of whether federal courts have exclusive jurisdiction under the PREP Act "largely irrelevant" "because none of the claims in the complaint, on its face, are brought under that Act"); *Gunter v. CCRC OPCO-Freedom Square, LLC*, No. 8:20-cv-1546-T-36TGW, 2020 U.S. Dist. LEXIS 201622, at *15 (M.D. Fl. Oct. 29, 2020) (finding the PREP ACT did not provide a basis for

held that even where a state law claim implicates covered countermeasures the PREP Act does not apply without a causal connection to those covered countermeasures.[6] These cases suggest the PREP Act does not "wholly[] displace" state law negligence claims that implicate healthcare entities and COVID-19. *Beneficial Nat'l Bank*, 539 U.S. at 8.

Additionally, the PREP Act does not provide a substitute cause of action for Plaintiff's claims. Instead, when applicable, the PREP Act provides immunity to defendants on state law negligence claims. State law may be completely preempted when "it has been replaced by federal law—but this happens because federal law takes over all similar claims, not because there is a preemption defense." *Lehmann v. Brown*, 230 F.3d 916, 919–20 (7th Cir. 2000).[7] As the Central District of California found when analyzing a similar PREP Act case, "immunity against state law or preemption of state law is not the equivalent of complete preemption and does not provide removal jurisdiction." *Martin v. Serrano Post Acute LLC*, No. CV 20-5937 DSF

---

federal question jurisdiction because plaintiff did "not assert any theory of liability that is in any way related to the Defendants' 'physical provision' of any 'countermeasure'").

[6] *See Haro v. Kaiser Found. Hosps.*, No. CV 20-6006-GW-JCX, 2020 WL 5291014, at *3 (C.D. Cal. Sept. 3, 2020) (finding the PREP Act does not completely preempt a wage and hour claim where the allegations were not causally connected to the employer's use of covered countermeasures but to the employer's requirement that employees arrive at work fifteen minutes in advance of their shift start times to begin screenings that involved possible covered countermeasures).

[7] At least one court has found that federal preemption applies to the PREP Act. *Parker v. St. Lawrence Cty. Pub. Health Dep't*, 102 A.D.3d 140, 954 N.Y.S.2d 259 (2012) (finding "[t]he breadth of the PREP Act's express preemption clause and the sweeping language of the statute's immunity provision (42 USC § 247d-6d) indicated that Congress intended to preempt all state law tort claims arising from the administration of covered countermeasures"). However, federal preemption is a question and analysis entirely distinct from the doctrine of complete preemption. Indeed, a federal preemption defense is not a legitimate basis for removal whereas a finding of complete preemption entitles a defendant to removal. *See Caterpillar Inc.*, 482 U.S. at 393 (finding that "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint."); *see also* 14C Wright and Miller, Fed. Prac. and Proc. Civ. § 3722.2 (Rev. 4th ed.) (discussing the unique contours of complete preemption compared to "ordinary' preemption").

(SKX), 2020 WL 5422949, at *2 (C.D. Cal. Sept. 10, 2020). Here, in addition to providing

immunity, the PREP Act only supplies a limited cause of action for willful misconduct. This

narrow path is not a substitute for Plaintiff's state law negligence claims and does not warrant a

finding that the limited exception of complete preemption applies to the PREP Act.

## CONCLUSION

The Court GRANTS Plaintiff's Motion to Remand to State Court [6] and DENIES as

moot Defendant's Motion to Dismiss for Failure to State a Claim [4]. This case is REMANDED

to the Multnomah County Circuit Court.

IT IS SO ORDERED.


DATED:   December 27, 2020


MARCO A. HERNÁNDEZ
United States District Judge